NO. 12-02-00017-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


JIMMIE SHAW, INDIVIDUALLY AND AS § APPEAL FROM THE 145TH

REPRESENTATIVE OF THE ESTATE OF

AUBREY J. SHAW, AND ON BEHALF OF

HER CHILDREN, BOB SHAW, BILL SHAW,

AND KIM SHAW KLEIN, APPELLANTS 


 §JUDICIAL DISTRICT COURT OF


V.



BMW HEALTHCARE, INC., D/B/A

WESTRIDGE MANOR NURSING HOME,

AND CHARLES WILLIAMSON,

APPELLEES
 § NACOGDOCHES COUNTY, TEXAS

 

OPINION ON MOTION FOR REHEARING

 Appellant Jimmie Shaw, Individually and as Representative of the Estate of Aubrey J. Shaw,
and on behalf of her children, Bob Shaw, Bill Shaw and Kim Shaw Klein ("the Shaws") filed a
motion for rehearing in the instant case. The Shaws' motion for rehearing is denied. However, our
opinion of August 14, 2002 is hereby withdrawn and the following opinion is substituted in its place.

 The Shaws appeal the trial court's order dismissing their claims against Appellees BMW
Healthcare, Inc., d/b/a Westridge Manor Nursing Home ("Westridge Manor"), and Charles
Williamson ("Williamson"). The Shaws raise three issues on appeal. We affirm. 


Background

 On November 19, 1998, Aubrey J. Shaw entered Westridge Manor in Nacogdoches, Texas,
which at that time was owned by BMW Healthcare, Inc. Williamson was the administrator of the
nursing home at the time Mr. Shaw was admitted. On November 21, Mr. Shaw was administered
sedatives to restrain him from wandering around the nursing home. The sedatives rendered Mr.
Shaw drowsy and then unconscious. Mr. Shaw did not regain consciousness until he was
hospitalized on December 1. He stabilized in the hospital and was transferred to another facility,
Westward Trails Manor. During his stay at Westward Trails Manor, Mr. Shaw developed a very
high blood sugar level and eventually died on December 28.

 On January 5, 2001, the Shaws filed their Original Petition against Westridge Manor Nursing
Home, BMW Healthcare, Inc., d/b/a Westridge Manor, Texas-LTC Ltd. Partnership, Centers for
Long Term Care, Inc., Williamson, and Westward Trails Manor, Inc. ("Westward Trails"), alleging
wrongful death and survival causes of action, negligence, gross negligence, and an intentional tort. (1) 
The Shaws specifically alleged that Mr. Shaw died as a result of Westridge Manor's negligence in
administering an overdose of sedatives to him on November 21 and Westward Trails' negligence
in failing to monitor his blood sugar level. The Shaws also alleged that Williamson negligently
breached his statutory duty to ensure that Westridge Manor was in compliance with all state and
federal regulations governing nursing homes when he allowed members of his nursing staff to
illegally use chemical restraints for their convenience.

 In support of their allegations and in order to comply with the requirements of the Medical
Liability and Insurance Improvement Act (2) ("the Act"), the Shaws filed two expert reports on June
26, 2001. One of these reports was prepared by Dr. Howard Parness and the other was prepared by
Suzanne Frederick, a registered nurse. On October 25, 2001, Westridge Manor and Williamson ("the
defendants") jointly filed a Motion to Dismiss and Motion for Statutory Sanctions ("motion to
dismiss") pursuant to section 13.01(l) of the Act, (3) complaining that neither report complied with the
Act's "expert report" requirements. Specifically, the defendants argued that the reports were
deficient because neither stated how the standard of care was breached or adequately addressed
causation. Williamson also argued that, even if the expert reports adequately addressed Westridge
Manor's conduct, all claims against him should be dismissed because the Shaws failed to provide 
him with an expert report that outlined the manner in which his conduct as administrator of the
nursing home breached any standard of care and proximately caused the Shaws' damages. 

 The defendants' motions were heard on October 29, 2001. The trial court granted their
motion to dismiss and denied their motion for statutory sanctions on November 15, 2001. On
December 6, 2001, the Shaws filed a document entitled "Motions For Reconsideration, For Findings
of Fact, For a 30-Day Grace Period Under Section [sic] 4590i, § 13.01(g), And In The Alternative,
For Severance" of their causes of action against Westridge Manor and Williamson from their claims
against Westward Trails in order to make the court's order of dismissal final and appealable. On
December 19, 2001, the trial court granted the Shaws' motion for severance but denied all other
relief. The Shaws now appeal, raising three issues.


Adequacy of the Expert Reports

 In their first issue, the Shaws contend that the trial court abused its discretion in granting the
defendants' motion to dismiss because the expert reports they submitted complied with the statutory
requirements.

 Requirements for Expert Reports

 In medical malpractice cases, plaintiffs are required, within 180 days of filing suit, either to
provide each defendant physician and health care provider with an expert report and the expert's
curriculum vitae, or to nonsuit the claims. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d) (Vernon
Supp. 2002). An "expert report" is defined as a written report that (1) provides a fair summary of
the expert's opinions as of the date of the report regarding applicable standards of care, (2) the
manner in which the care rendered by the physician or health care provider failed to meet the
standards, and (3) the causal relationship between that failure and the injury, harm, or damages
claimed. Id. § 13.01(r)(6). If a plaintiff fails within the time allowed to provide the expert reports
and curriculum vitae, or to nonsuit the case, the trial court must sanction the plaintiff by dismissing
the case with prejudice, awarding costs and attorney's fees to the defendant, and ordering the
forfeiture of any applicable cost bond necessary to pay that award. Id. § 13.01(e). If a plaintiff
timely provides a defendant with a document that he or she believes is an appropriate expert report,
the defendant can move to challenge the adequacy of the report. A trial court must grant a motion
challenging the adequacy of an expert report only if it appears to the court, after hearing, that the
report does not represent a good faith effort to comply with the statutory definition of an expert
report. Id. § 13.01(l). To constitute a good-faith effort, the report must inform the defendant of the
specific conduct the plaintiff has called into question and provide a basis for the trial court to
determine that the claims have merit. American Transitional Care v. Palacios, 46 S.W.3d 873, 879
(Tex. 2001). A report that only states the expert's conclusions about the standard of care, breach,
and causation does not fulfill these two purposes. Id. Nor can a report meet these purposes and thus
constitute a good faith effort if it omits any of the statutory requirements. Id. The court should look
no further than the report in conducting a good faith inquiry. Id. at 878. If a trial court determines
that an expert report does not meet these statutory requirements and the plaintiff's time for filing a
report has passed, the court must dismiss with prejudice the claims against the defendant who
challenged the report. Id. § 13.01(e). 

Standard of Review

 A trial court's determination about the adequacy of an expert report under the Act is reviewed
under an abuse-of-discretion standard. Id. at 877. Under this standard, we defer to the trial court's
factual determinations, but review questions of law de novo. Knie v. Piskun, 23 S.W.3d 455, 461
(Tex. App.- Amarillo 2000, pet. denied). A trial court abuses its discretion if it acts in an arbitrary
or unreasonable manner without reference to any guiding rules or principles. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). When reviewing matters
committed to the trial court's discretion, a court of appeals may not substitute its own judgment for
the trial court's judgment. Flores v. Fourth Court of Appeals, 777 S.W.2d 38, 41 (Tex. 1989).

Report of Dr. Howard Parness

 Dr. Howard Parness is board certified in internal medicine. Other than his summary of Mr.
Shaw's medical records, the opinions Dr. Parness gives in his report regarding Mr. Shaw's treatment
are that the injection of sedatives "contributed to [Mr. Shaw's] mental deterioration and may have
indirectly contributed to his death," that the injection was an "excessive dosage," and that Dr.
Parness "would have started him off on a much lower dose."

 Dr. Parness's report does not delineate any standards of care that should have been followed
when the sedatives were administered to Mr. Shaw. The Shaws admit that Dr. Parness's report does
not set forth the applicable standards of care or address how Westridge Manor and Williamson
breached any standards; however, they argue that these omissions are irrelevant because Dr. Parness
was only rendering an opinion on the cause of death. An opinion solely addressing the cause of
death does not satisfy the statutory requirements. Dr. Parness's report fails to state any standards of
care and any breaches of those standards of care; therefore, it cannot be considered a good-faith
effort to comply with the statutory requirements for expert reports. See Palacios, 46 S.W.3d at 879.

Report of Suzanne Frederick

 The second expert report the Shaws submitted to the defendants was the "Professional
Nursing Opinion" of Suzanne Frederick, a registered nurse. Nurse Frederick's report lists thirteen
different federal and state guidelines for nursing standards of care in nursing homes, summarizes Mr.
Shaw's medical records, and states that Westridge Manor failed to meet each of the thirteen
guidelines. Her report does not address Williamson's conduct.

 The majority of the regulations in Nurse Frederick's report address general nursing home
guidelines. (4) However, the one regulation in the report relevant to the conduct at issue states that
"[t]he resident shall be free of restraints, either physically or chemically, imposed for purposes of
discipline or convenience, unless required to treat the resident's medical symptoms." She also
expresses her opinion that the nurses chemically restrained Mr. Shaw, failed to properly treat his
behavior (his wandering), failed to implement a proper care plan regarding Mr. Shaw's behavior, and
failed to take appropriate actions when Mr. Shaw was oversedated. After Nurse Frederick lists these
opinions, she summarizes Mr. Shaw's medical records and lists twelve general "failures of care" at
Westridge Manor. The one "failure of care" Nurse Frederick lists that focuses on Mr. Shaw's 
treatment is Westridge Manor's "[f]ailure to properly address the use of restraints for this resident,
including, but not limited to proper monitoring." The last paragraph of her report states that
Westridge Manor failed to meet the standard of care and that those failures "caused and/or
contributed to Mr. Shaw's worsening condition and severe decline, loss of functional and mental
abilities."

 The standard of care for a hospital or other medical provider is what an ordinarily prudent
hospital or other medical provider would do under the same or similar circumstances. Palacios, 46
S.W.3d at 880 (citing Birchfield v. Texarkana Mem'l Hosp., 747 S.W.2d 361, 366 (Tex. 1987)). 
Identifying the standard of care is critical: Whether a defendant breached his or her duty to a patient
cannot be determined absent specific information about what the defendant should have done
differently. Id. 

 Nurse Frederick opines that Westridge Manor failed to meet various federal and state
statutory guidelines for nursing homes participating in the Medicare and Medicaid programs, thereby
breaching the standard of care. Although Nurse Frederick's report does state that Mr. Shaw (1)
should have been "free of restraints, either physically or chemically," (2) that the nurses "failed to
properly treat his behavior," and (3) that "the staff failed to take appropriate actions," she does not
specifically state (1) what Westridge Manor should have done differently instead of chemically
restraining him, (2) what the nurses should have done to properly treat his behavior, or (3) what
appropriate actions the staff should have taken. "While a fair summary is something less than a full
statement of the applicable standard of care and how it was breached, even a fair summary must set
out what care was expected, but not given." Id. Therefore, even assuming that Nurse Frederick
correctly stated the standard of care, her report does not specifically state what care was expected
but not given and cannot be considered a good-faith effort to comply with the statutory requirements
regarding expert reports. 

 Based upon our review of the expert reports the Shaws submitted in this case, we conclude
that the reports do not contain all of the information required by section 13.01(r)(6). Therefore, the
trial court did not abuse its discretion in finding that the reports of Dr. Parness and Nurse Frederick
were not good faith efforts to comply with the statutory requirements for expert reports. The Shaws'
first issue is overruled.


Dismissal of Intentional Tort Claims

 In their second issue, the Shaws contend that the trial court abused its discretion in
dismissing their "intentional abuse of the elderly" claims against Williamson and Westridge Manor. (5) 
The Shaws pleaded in their Original Petition that the conduct of Westridge Manor and its employees
constituted gross negligence and violated section 22.04 of the Texas Penal Code. (6) They further
contend that a violation of section 22.04 constitutes "intentional abuse of the elderly." The Shaws
argue that because intentional tort claims are not medical malpractice claims under the Act, expert
reports are not necessary. Williamson asserts that the Act requires the Shaws to provide him with
an expert report because he is a "health care provider" as that term is defined in the statute. He also
argues that the Shaws cannot avoid the Act's requirements by "recasting" their health care liability
claims against him as another cause of action. 

 A "health care liability claim" is defined as


 [a] cause of action against a health care provider or physician for treatment, lack of treatment, or other
claimed departure from accepted standards of medical care or health care or safety which proximately
results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort
or contract. 



Tex. Rev. Civ. Stat. Ann. art. 4590i, § 1.03(a)(4). To determine whether the underlying claim is
a "health care liability claim," we review the nature of the claim. Sorokolit v. Rhodes, 889 S.W.2d
239, 242 (Tex. 1994); Bush v. Green Oaks Operator, Inc., 39 S.W.3d 669, 672 (Tex. App.- Dallas
2001, no pet.). Claimants cannot simply recharacterize a health care claim and thereby avoid the
Act's standards and requirements. See, e.g., Gormley v. Stover, 907 S.W.2d 448, 450 (Tex. 1995);
Sorokolit, 889 S.W.2d at 242 (Tex. 1994). If the cause of action is based on a breach of the standard
of care applicable to health care providers, the cause of action will be considered nothing more than
a health care liability claim. Gormley, 907 S.W.2d at 450; Bush, 39 S.W.3d at 672. A factor in
determining whether the Act applies is whether the act or omission complained of was an inseparable
part of the rendition of medical services. Walden v. Jeffery, 907 S.W.2d 446, 448 (Tex. 1995);
Bush, 39 S.W.3d at 672

 The Shaws argue that Williamson and Westridge Manor were negligent by allowing the
nursing staff to administer chemical restraints to Mr. Shaw. The Shaws also argue that this same
conduct constitutes both gross negligence and an intentional tort because the nurses were allowed
to intentionally commit "elder abuse." After reviewing the Shaws' petition, we find that these claims
are nothing more than claims for breaches of the accepted standards of care and thus must be
governed by the Act. The facts that the Shaws allege as negligence against Williamson and
Westridge Manor are the same facts that they rely on for their claims of "intentional elder abuse,"
i.e., that Mr. Shaw was given an overdose of sedatives. These claims are based on the breach of a
standard of care because they deal with duties owed by a health care provider to a patient and deal
with what an ordinarily prudent hospital or other medical provider would do under the same or
similar circumstances. See Palacios, 46 S.W.3d at 880 (citing Birchfield v. Texarkana Mem'l
Hosp., 747 S.W.2d 361, 366 (Tex. 1987)). Therefore, the Shaws should have submitted an expert
report that considered Williamson's actions. It is undisputed that the Shaws did not file an expert
report that addresses the conduct of Williamson; therefore, the trial court did not abuse its discretion
in dismissing the Shaws' claims against him. The Shaws' second issue is overruled. 


Denial of Thirty-Day Grace Period to Cure Deficient Reports

 In their final issue, the Shaws argue that the trial court abused its discretion in denying them 

a thirty-day grace period under section 13.01(g) of the Act to cure their deficient reports because they
satisfied the requirements necessary to receive a grace period under subsection (g). The Shaws
further contend that their motion for a grace period should have been granted because section
13.01(g) was intended by the Legislature as an equitable remedy to prevent dismissal of meritorious
cases on technical grounds. We review the trial court's decision to deny a request for a grace period
under an abuse of discretion standard. Marquez v. Providence Mem. Hosp., 57 S.W.2d 585, 590
(Tex. App.-El Paso 2001, no pet.); Hargrove v. Denno, 40 S.W.3d 714, 716 (Tex. App.-San
Antonio 2001, no pet.).

 If a plaintiff does not adequately comply with the statutory requirements regarding expert
reports, he has three avenues to seek more time to comply with the statute. Under subsection (f), the
trial court may extend the 180-day period for filing an expert report for an additional thirty days if
a motion to extend is filed and, after a hearing, the trial court finds there is good cause to grant the
extension. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(f). Subsection (h) allows parties to make
an enforceable, binding agreement to extend the 180-day period if the agreement is reduced to
writing, signed and filed with the trial court. Id. § 13.01(h). A plaintiff can also seek additional time
to meet the requirements for an expert report under subsection (g), which states that


 [n]otwithstanding any other provision of this section, if a claimant has failed to comply with a deadline
established by Subsection (d) of this section and after a hearing the court finds that the failure of the
claimant or the claimant's attorney was not intentional or the result of conscious indifference but was
the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the
claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall
be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e)
of this section.


Id. at § 13.01(g). 

 The Shaws filed their expert reports on or about June 25, 2001, within the 180-day time
period for filing expert reports. The defendants' motion to dismiss was heard on October 29. The
trial court signed the order granting the defendants' motion to dismiss and denying their motion for
statutory sanctions on November 8. On December 6, the Shaws filed a motion seeking a thirty-day
grace period under subsection (g). Subsection (g) places a deadline on which motions for an
extension of time must be filed: before any hearing on a motion by a defendant under subsection (e)
of section 13.01. Id. Section 13.01(e) provides that


 [i]f a claimant has failed, for any defendant physician or health care provider, to comply with
Subsection (d) of this section [mandating that a plaintiff must furnish an expert report within 180 days
or nonsuit the claim] within the time required, the court shall, on the motion of the affected physician
or health care provider, enter an order awarding as sanctions against the claimant or the claimant's
attorney:

 (1) the reasonable attorney's fees and costs of court incurred by that defendant;

 (2) the forfeiture of any cost bond respecting the claimant's claim against that defendant to the extent
necessary to pay the award; and

 (3) the dismissal of the action of the claimant against that defendant with prejudice to the claim's
refiling.


Id. § 13.01(e).

 The Shaws do not deny that their motion for a grace period was filed after the hearing on the
defendants' motion to dismiss. However, the Shaws argue that their failure to file the motion before
the hearing on the motion to dismiss is of no consequence because the defendants filed their motion
pursuant to subsection (l) (challenging the adequacy of the report because it does not represent a
good faith effort to comply with the statutory definition of an expert report) and not subsection (e). 
Since the motion was filed pursuant to subsection (l), the Shaws argue the time constraints do not
apply. In essence, the Shaws contend that because the defendants filed their motions under
subsection (l) instead of subsection (e) (the subsection specifically stated in the last sentence of
subsection (g)), the last sentence in subsection (g) should be ignored because it is not applicable to
their case. Therefore, the Shaws argue, their motion for an extension of time was timely filed. The
Shaws maintain that since the report was timely filed, this court should conduct a subsection (g)
analysis and review whether or not their failure to comply with the expert report requirements was
intentional, the result of conscious indifference, or the result of an accident or mistake. We disagree
with the Shaws' interpretation of subsection (g).

 The Texas Supreme Court has addressed this statute in the recent Palacios decision. In
Palacios, the court held that a trial court's determination regarding the inadequacy of an expert
report will be reviewed under an abuse of discretion standard. See Palacios, 46 S.W.3d at 877. If
an expert report does not put the defendant or the trial court on notice of the conduct complained of,
section 13.01(l) affords the trial court no discretion but to conclude that the report does not represent
a good-faith effort to provide a fair summary of the standard of care and how it was breached, as
section 13.01(r)(6) requires. Id. at 880. If the statutory 180-day time period has passed when the
trial court makes that determination, section 13.01(e) requires the trial court to dismiss the plaintiff's
claims. Id. Palacios therefore holds that if a report is not found to be a "good-faith effort" to
comply with the statutory requirements for expert reports, that is the same as if the plaintiff had filed
no report at all because the inadequate report does not meet the definition of an "expert report." The
supreme court, in effect, made no distinction between the filing of a motion to dismiss under
subsection (e) (failure to file any report) and subsection (l) (failure to file an adequate report) because
the sanction for not filing a report and for filing an inadequate report is the same: dismissal of the
case. See Whitworth v. Blumenthal, 59 S.W.3d 393, 399 (Tex. App.-Dallas 2001, pet. dism'd by
agr.) (holding that if a report does not adequately set forth the elements required by statute, it is not,
by definition, an "expert report.")

 Other courts interpreting section 13.01(g) have impliedly reached the conclusion that
subsection (l) motions are the same as subsection (e) motions by holding that a plaintiff must file a
motion seeking a thirty-day grace period before the hearing on the defendant's motion to dismiss
pursuant to section 13.01(l). See, e.g., Richburg v. Wolf, 48 S.W.3d 375 (Tex. App.-Eastland 2001,
no pet.) (holding that if the plaintiff had filed a motion for grace period before the hearing on the
defendant's section 13.01(l) motion to dismiss instead of filing a supplemental report, he could have
cured any deficiencies); Hightower v. Saxton, 54 S.W.3d 380, 382 (Tex. App.-Waco 2001, no pet.)
(holding that because the plaintiff did not ask for a thirty-day grace period before the hearing on the
defendant's section 13.01(l) motion to dismiss, her request for a grace period filed twenty-seven days
after the hearing was untimely); DeLeon v. Vela, 70 S.W.3d 194 (Tex. App.-San Antonio 2001, no
pet.) (holding that even though the plaintiff filed a motion for a grace period before the hearing on
the defendant's motion to dismiss pursuant to section 13.01(l), subsection (e) required dismissal of
the case because the plaintiff did not establish that she was entitled to a thirty-day grace period); but
see McClure v. Landis, 959 S.W.2d 679 (Tex. App.-Austin 1997, writ denied) (holding that a
plaintiff was entitled to a grace period when no request was filed before the hearing on the
defendant's motion to dismiss but was requested in a motion for new trial).

 If a trial court grants a motion to dismiss, the result is the same regardless of whether the
motion is filed pursuant to subsection (l) or (e). See Palacios, 46 S.W.3d at 880. If a defendant
challenges the adequacy of the report under subsection (l) and moves to dismiss the case, the
dismissal is mandated by subsection (e)(3) because that is the only subsection that addresses
dismissal of a case. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(e)(3). Under Palacios, a motion
to dismiss based on the inadequacy of a report will therefore always be a subsection (e) motion. If
a plaintiff seeks a grace period pursuant to subsection (g), then he must file his motion seeking the
grace period before a hearing on a motion to dismiss, regardless of whether such a motion is brought
under subsection (l) or (e). David F. Johnson, Exploring the Expert Report of 4590I, 54 Baylor L.
Rev. 359, 388 (2002).

 In the case at bar, the Shaws filed their motion for a thirty-day grace period thirty-eight days
after the hearing on the defendants' motion to dismiss. Their motion was untimely. Therefore, the
trial court did not abuse its discretion in denying it. The Shaws' third issue is overruled.


Conclusion

 Based upon our review of the record, we hold that the trial court did not commit error in its
determination that (1) the Shaws' expert reports were inadequate, (2) the Shaws' claims against
Williamson and Westridge Manor should be dismissed, and (3) the Shaws were not entitled to a
thirty-day grace period. The trial court's order of dismissal is affirmed.



 SAM GRIFFITH 

 Justice



Opinion delivered November 8, 2002.

Panel consisted of Gohmert, Jr., C.J., Worthen, J., and Griffith, J.















(PUBLISH)
1. The Shaws later nonsuited their claims against Texas-LTC Ltd. Partnership and Centers for Long Term
Care, Inc. 
2. Tex. Rev. Civ. Stat. Ann. art. 4590i (Vernon Supp. 2002).
3. Section 13.01(l) instructs a court to grant a motion challenging the adequacy of an expert report if it
appears to the court, after a hearing, that the report does not represent a good faith effort to comply with the statutory
definition of an expert report. Id. § 13.01(l). If a plaintiff provides a defendant with an inadequate expert report,
section 13.01(e) requires the trial court to dismiss the plaintiff's case with prejudice and order the plaintiff to (1)
forfeit any cost bond, and (2) pay the defendant's reasonable attorney's fees and costs of court. Id. § 13.01(e).
4. The regulations Nurse Frederick cites in her report are found in chapter 42, section 483 of the Code of
Federal Regulations; title 40, chapter 19 of the Texas Administrative Code; and section 217 of the Texas
Occupations Code, also known as the "Texas Nursing Practice Act." Chapter 19 of the Texas Administrative Code
contains the requirements that a nursing facility must meet in order to be licensed as a nursing facility and also to
qualify to participate in the Medicaid program. 40 Tex. Admin. Code Ann. § 19.1(b) (Vernon 2000). These
requirements also serve as a basis for survey activities for licensure and certification. Id.
5. We find no cases recognizing "intentional abuse of the elderly" as a distinct cause of action. For purposes
of argument, we assume, without deciding, that this is a recognized tort.
6. Section 22.04 of the Texas Penal Code makes an offense any intentional, knowing, reckless or criminally
negligent act or omission that causes a child, elderly individual, or disabled individual (1) serious bodily injury; (2)
serious mental deficiency, impairment, or injury or (3) bodily injury.