Opinion issued April 28, 2005












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00580-CV




CHERYL P. HILLMAN, Appellant

V.

DIAGNOSTIC CLINIC OF HOUSTON, P.A., Appellee




On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2003-00278




MEMORANDUM OPINION

          This appeal arises from medical malpractice and contractual claims brought by
appellant, Cheryl P. Hillman, against appellee, Diagnostic Clinic of Houston, P.A.
(“the Clinic”). The trial court dismissed Hillman’s claims with prejudice on the
ground that the expert report she filed to support her medical malpractice claim did
not comply with section 13.01, article 4590i, the Medical Liability and Insurance
Improvement Act.


 
          In two points of error, Hillman contends that the trial court erred (1) in finding
her expert’s report inadequate and (2) in dismissing her remaining contractual claim. 
In a cross–point, the Clinic contends that the trial court erred in granting Hillman an
extension to file the report.
          We affirm the trial court’s ruling that the expert report is inadequate, and
reverse and remand Hillman’s breach of contract claim.
BACKGROUNDOn October 20, 2000, Hillman, while in the midst of undergoing chemotherapy,
suffered a chemical burn to her left arm when the treating agent leaked outside of her
vein and under her skin. Hillman suffered pain and damage to her skin. Due to the
injury, further chemotherapy was postponed. 
          Because treatment was delayed, Hillman’s insurance provider, Unicare, refused
to pay an outstanding bill in the amount of $2,721.00 to the Clinic. The Clinic sought
reimbursement directly from Hillman. To end incessant collection calls, Hillman paid
the bill. On or about November 12, 2002, Unicare advised Hillman that it had paid
the Clinic the $2,721.00 and that the Clinic would reimburse her. Hillman has
requested the reimbursement from the Clinic but has been denied.
          On January 3, 2003, Hillman filed suit against the Clinic, alleging medical
malpractice. Hillman amended her petition on September 16, 2003 to add the breach
of contract claim for the Clinic’s failure to reimburse. 
          The parties do not dispute that Hillman failed to timely file her expert report,
as required under article 4590i, subsection 13.01(d).


 However, Hillman was granted
a 30-day extension under subsection 13.01(g) because the trial court found that
Hillman’s failure to timely file her expert report was not intentional.


 Hillman then
filed an expert report by Judith A. Headley, R.N.
            On October 2, 2003, the Clinic moved to dismiss Hillman’s case on the
grounds that the report filed was substantively inadequate. The trial court found
Hillman’s report inadequate to meet the requirements of section 13.01(r)(6) and
dismissed all of Hillman’s claims with prejudice.



A.      Standard of Review
          We review all section 13.01, article 4590i, rulings for an abuse of discretion. 
Am. Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001); Strom v.
Mem’l Hermann Hosp. Sys., 110 S.W.3d 216, 220 (Tex. App.—Houston [1st Dist.]
2003, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner without reference to guiding rules or principles. Downer v.
Aquamarine Ops., Inc., 701 S.W.2d 238, 241–42 (Tex. 1985). When reviewing
matters committed to the trial court’s discretion, we may not substitute our own
judgment for that of the trial court. Walker v. Packer, 827 S.W.2d 833, 839 (Tex.
1992).
B.      Inadequacy of the Expert Report
          In her first point of error, appellant contends that the trial court abused its
discretion in dismissing her suit for failure to file an adequate expert report. 
           Expert testimony is required to support a medical-malpractice claim. Palacios,
46 S.W.3d at 876. Under former subsection 13.01(r)(6), a claimant in a health care
liability claim must file an expert report 
that provides a fair summary of the expert’s opinions as of the date of
the report regarding applicable standards of care, the manner in which
the care rendered by the physician or health care provider failed to meet
the standards, and the causal relationship between that failure and the
injury, harm, or damages claimed.



 
The expert report must represent a good-faith effort to comply with this statutory
definition. Palacios, 46 S.W.3d at 878. The report can be informal and need not
marshal all of the plaintiff’s proof, but must include the expert’s opinion on each of
the elements identified in the statute—standard of care, breach, and causation. Id. 
To constitute a good-faith effort, (1) the report must inform the defendant of the
specific conduct the plaintiff has called into question and (2) must provide a basis for
the trial court to conclude that the claims have merit. Id. at 879. A report that merely
states the expert’s conclusions as to the standard of care, breach, and causation does
not fulfill these two purposes. Id. The expert must explain the basis for his
statements and must link his conclusions to the facts. Bowie Mem’l Hosp. v. Wright,
79 S.W.3d 48, 52 (Tex. 2002). 
          Hillman filed an expert medical report by Judith A. Headley, R.N., stating in
part:
Applicable standards of care for vesicant chemotherapeutic agents such
as doxorubicin include:
          a)       Patient education regarding the vesicant potential of drugs
(citation)
          b)      Education of patients to report immediately any pain or
burning or swelling during the infusion (citation)
          c)       Avoidance of the dorsum of the hand or wrist for venous
access to administer vesicants (citation)
          d)      Frequent (every 1-2 cc) checks for blood return when
administering vesicants (citation)
          e)       At the first sign of infiltration of drug, stop the infusion,
disconnect the IV and attempt to aspirate residual drug
with a syringe (citation)
          f)       Application of ice pack to the site at least four times daily
for the first 24–48 hours (citation)
 
I am of the opinion that [the Clinic] departed from the above-referenced
acceptable standards of nursing care in failure to educate Ms. Hillman
regarding the risks and potential adverse reactions regarding
administration of vesicant agents, failure to monitor frequently for blood
return during the drug infusion, and failure to attain and secure adequate
venous access via a central line after the infiltration of the first
peripheral IV line. Additionally, failure to adhere fully to standards of
nursing care for the management of doxorubicin extravasation is noted.
 
It is my opinion that, within a reasonable medical probability, the above-referenced departures from the acceptable standards of nursing care by
[the Clinic] caused the extravasation of doxorubicin with subsequent
damage to the structures and tissues of the left arm sustained by Ms.
Hillman on October 20, 2000.
 
My opinions are based upon the review of documents that have been
made available to me as of this report date.          The Clinic contends that Headley’s report fails to meet the statutory
requirements because “it provided generic conclusions about breach and causation
without tying the conclusions to the specific facts of Hillman’s case.” The Clinic
contends that Headley never showed actual facts from Hillman’s treatment that
constituted a breach of her stated standards, or showed that a breach of the stated
standards caused Hillman’s injury. The Clinic argues that Headley does not state
which documents she relied upon or that she ever actually reviewed Hillman’s
medical records.
          The standard of care is what a reasonably prudent physician or health-care
provider would do under the same or similar circumstances. Palacios, 46 S.W.3d at
at 880. It is not sufficient for an expert to state that he or she is familiar with the
standard and simply to conclude whether the standard was met. Id. Rather, there
must be specific information in the report to indicate what the expectation was, how
it was not met, and what the defendant should have done differently. Id.
          As to breach, Headley’s report generally opines that the Clinic failed to meet
the standard of care, as follows: 
failure to educate Ms. Hillman regarding the risks and potential adverse
reactions . . . , failure to monitor frequently for blood return during the
drug infusion, and failure to attain and secure adequate venous access via
a central line . . . . Additionally, failure to adhere fully to standards of
nursing care for the management of doxorubicin extravasation is noted. 

          The expert report does not indicate the bases for Headley’s conclusions. She
does not state that she reviewed Hillman’s records or refer to any specific entries in
Hillman’s records to support her conclusions. Rather, Headley generally summarizes
the standards and seems to generally opine that they were not met because Hillman
is injured. This is inadequate to constitute a good-faith effort under the statute. See
id.; Shaw v. BMW Healthcare, Inc., 100 S.W.3d 8, 13–14 (Tex. App.—Tyler 2002,
no pet.) (concluding that a report that does not specifically state what care was
expected and what care was not given can not be considered good-faith effort to
comply with the statutory requirements concerning expert reports). 
          In Palacios, the Texas Supreme Court held that an expert report concerning a
fall from a hospital bed was deficient because it failed to specifically relate the
injurious event to a breach of a particular standard of care. See Palacios, 46 S.W.3d
at 879–80. There, the expert failed to state what specific conduct the standard of care
required and what the defendant should have done differently—whether the patient
should have been restrained differently, or monitored more closely, or some other
precaution was required. Id. As in Palacios, this report fails to explain how the
standard of care was breached. It does not indicate whether improper methods were
used in administering the agent, how often Hillman was monitored, whether staff
educated Hillman about her treatment, or what measures were taken when a problem
was discovered. 
          As to causation, Headley states that it is her “opinion that, within a reasonable
medical probability, the above-referenced departures from the acceptable standards
of nursing care by [the Clinic] caused the extravasation of doxorubicin with
subsequent damage to the structures and tissues of the left arm sustained by Ms.
Hillman on October 20, 2000.” However, this conclusion is not explained or linked
to any facts demonstrating a specific departure from the standard. See Bowie Mem’l
Hosp., 79 S.W.3d at 53–54; Strom, 110 S.W.3d at 224. 
          In Bowie, the trial court examined an expert’s statement that had radiographs
been correctly read and had appropriate personnel acted upon the findings, the patient
would have had a better outcome. Bowie, 79 S.W.3d at 52-53. The court found that
there was no language in the expert’s report to indicate what specific failure to meet
the applicable standards caused the injury to the patient. Id. at 53. 
          In Strom, this Court found an expert’s report conclusory because it stated that
the failure to properly pad and position a patient’s leg and knee resulted in injury but
did not set out the manner in which the improper procedure caused the injury. Strom,
110 S.W.3d at 224. 
          Here, as in Bowie and Strom, the expert’s report fails to link a specific manner
of conduct by the Clinic to Hillman’s injury. 
          Although Hillman is not required to marshal all of her proof, the report must
include, within its four corners, information linking Headley’s conclusions to the
Clinic’s alleged breach. See Palacios, 46 S.W.3d at 878. We are not permitted to
infer breach and causation on the basis that an injury occurred and something must
have caused the injury. Bowie, 79 S.W.3d at 53. We cannot say that Headley’s report
provided enough information to inform the Clinic of the specific conduct that Hillman
has called into question or provided enough information to allow the trial court to
determine that Hillman’s claims have merit. See Palacios, 46 S.W.3d at 878.
          We hold that the trial court did not abuse its discretion in concluding that the
report did not represent a good faith effort to meet the requirements of section
13.01(r)(6) and in dismissing Hillman’s medical malpractice claim against the Clinic
as required under section 13.01(e).



          Hillman’s first point of error is overruled.
C.      Breach of Contract Claim
          In her second point of error, Hillman contends that the trial court erred in
dismissing her breach of contract claim because the contract claim is separate and
distinct from her medical malpractice claim, and the Clinic’s motion to dismiss did
not address her contract claim.
          A health-care liability claim is 

[A] cause of action against a health care provider or physician for
treatment, lack of treatment, or other claimed departure from accepted
standards of medical care or health care or safety which proximately
results in injury to or death of the patient, whether the patient's claim or
cause of action sounds in tort or contract.
 
State v. Thirteenth Court of Appeals, 933 S.W.2d 43, 45 (Tex. 1996). We look to the
underlying nature of the claim to determine whether the claim is a health-care liability
claim. Gormley v. Stover, 907 S.W.2d 448, 450 (Tex. 1995). If the cause of action
is based on a health-care facility’s breach of the standard of medical care, then the
claim is a health-care liability claim, no matter how it is labeled. Id.
          After examining the allegations, we conclude that Hillman’s claim for
reimbursement is not based on a breach of a standard of medical care. See Bush v.
Green Oaks Op. Inc., 39 S.W.3d 669, 671–72 (Tex. App.—Dallas 2001, no pet.). 
Rather, it is simply a claim that the Clinic has received double-payment for a service. 
This is in the nature of a contract claim and is not an inseparable part of the medical
services rendered. See id. at 672. Hence, her claim is not subject to the Medical
Liability and Insurance Improvement Act, and no expert report was required to
support her claim.
          In addition, the Clinic never sought dismissal of Hillman’s contract claim. 
When a trial court grants more relief than was requested, we consider all matters
raised on appeal and reverse and remand those portions of the judgment rendered in
error. Page v. Geller, 941 S.W.2d 101, 102 (Tex. 1997).
          Hillman’s second point of error is sustained.
CONCLUSION

          Having determined that the trial court did not abuse its discretion in dismissing
Hillman’s medical malpractice claim because the expert report was inadequate, we
need not reach the Clinic’s cross-point that the trial court erred in granting Hillman
an extension of time to file the report.
          We reverse and remand the trial court’s judgment as to Hillman’s breach of
contract claim. We affirm the trial court’s judgment in all other respects.



                                                             Laura Carter Higley 
                                                             Justice

Panel consists of Chief Justice Radack, and Justices Higley and Bland.