**Opinion issued February 11, 2014**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-13-00479-CV

—————————————

**ROJAN AMJADI, M.D., Appellant**

**V.**

**ANA S. MANDUJANO, Appellee**

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-61345**

---

### MEMORANDUM OPINION

In this interlocutory appeal,[1] appellant, Rojan Amjadi, M.D., challenges the

trial court's order denying his motion to dismiss the health care liability claims[2]

---

[1]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon Supp. 2013).

[2]  *See id.* § 74.001(a)(13).

made against him by appellee, Ana S. Mandujano, in her suit for negligence, fraudulent misrepresentation, and, in the alternative, lack of informed consent and violations of the Texas Deceptive Trade Practices Act.[3] In two issues, Amjadi contends that the trial court erred in denying his motion to dismiss Mandujano's claims on the ground that she had failed to timely serve him with a qualified expert report.[4]

We affirm.

## Background

In her original petition filed on October 16, 2012, Mandujano alleges that on November 18, 2010, Dr. Amjadi performed on her a bilateral mastopexy (breast lift) and an abdominoplasty (tummy tuck). She asserts that Amjadi, in his treatment of her, breached the standard of care of a reasonably prudent plastic surgeon by:

1. Failing to properly perform her breast implant [surgery], breast lifts, and abdominoplasty;
2. Failing to monitor her condition;
3. Failing to treat her condition properly after surgery; and,

---

[3] *See* TEX. BUS. & COM. CODE ANN. § 17.41–.926 (Vernon 2011 & Supp. 2013).

[4] *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, §§ 1–3, 2005 Tex. Gen. Laws 1590, 1590, *amended by*, Act of May 24, 2013, 83rd Leg., R.S., ch. 870, §§ 2, 3, 2013 Tex. Sess. Law Serv. 2220, 2220 (current version at TEX. CIV. PRAC. & REM. CODE § 74.351(a) (Vernon Supp. 2013)). We apply the former version of section 74.351(a) because Mandujano filed her original petition prior to September 1, 2013, the effective date the amendments. *See id.*

2

4. Failing to provide the medical and nursing care reasonably required for her condition.

Mandujano asserts that Amjadi's breach of the standards of care proximately caused her pain, severe scarring, disfigurement, implant rupture, infection, mental anguish, and the need for additional surgery. Amjadi answered the suit with a general denial.

On February 11, 2013, Mandujano filed with the district clerk an expert report authored by Michael F. Kaplan, M.D., F.A.C.S., along with his curriculum vitae. The same day, she served the expert report on Dr. Amjadi by facsimile transmission,[5] but she did not include in the transmission Kaplan's curriculum vitae. In his report, Kaplan notes that he is a licensed plastic surgeon, received his Medical Doctorate degree in 1960, and has been board certified in plastic surgery since 1975. He is a Fellow of the American College of Surgeons, a member of a number of medical organizations, and has served on a variety of hospital committees. Kaplan, who has been performing bilateral mastopexy and abdominoplasty procedures since 1974, is "familiar with the required standards of care of the plastic surgeon, specifically with breast implants, bilateral mastopexy procedures, [and] abdominoplasty procedures, which are the subject of this particular case." He explains that it is "[t]he ordinary standard of care for a

---

[5]    *See* TEX. R. CIV. P. 21a (allowing service of documents by facsimile); *Amaya v. Enriquez*, 296 S.W.3d 781, 784 (Tex. App.—El Paso 2009, pet. denied) (stating that health care liability claim expert report may be served by facsimile).

3

bilateral mastopexy" for a plastic surgeon to place the breasts symmetrically "with normal nipple/areolar complex centralized on the breast mound." Further, "[t]he ordinary standard of care for an abdominoplasty procedure" requires a plastic surgeon to make an

> [i]ncision . . . after marking the patient in the upright standing position just above the pubis hairline extending laterally to just above or below the anterior iliac crest, whichever is the patient's choice. Then the skin and subcutaneous tissue is raised, the muscles are repaired and removal of excess skin takes place. The placement of the umbilicus is then pulled through a new opening on the abdominal wall.

Dr. Kaplan reviewed Dr. Amjadi's history, operative report, pre-operative photographs, and progressive notes concerning Mandujano's surgery. Kaplan also reviewed the medical records of "Topcare Medical PA," a global imaging report concerning Mandujano, and current photographs taken of her after surgery. Based on his review, Kaplan, in regard to the bilateral mastopexy, opines that

> [Amjadi] did not meet the standards of care for the following reasons:
>> Asymmetric breasts,
>> Question that the patient may have a leaky right breast implant[,]
>> Hypertrophic painful scarring both on the breasts and the abdominoplasty incisions[, and]
>> Malposition of the nipple areolar complex as well as what looks to be leaving areolar tissue on both of [Mandujano's] vertical incisions[.]

Kaplan explains that Amjadi "failed to place the nipple areolar complex on the breast mound symmetrically and appears not to have removed all of the areolar tissue after completing the mastopexy/augmentation."

4

In regard to the abdominoplasty, Dr. Kaplan explains that Dr. Amjadi "failed to place the incision low enough to be concealed by . . . clothing" and "left excess skin below [Mandujano's] hypertrophic scar thus not obtaining the maximum amount of tightness for [her]." He opines, "in terms of reasonable medical probability and based on [his] review of the medical records as well as [his] education, training, and experience, that the treatment provided by Dr. Amjadi was below the accepted standards of care."

On February 25, 2013, Dr. Amjadi moved to dismiss Mandujano's health care liability claims, contending that she had failed to timely serve him with a qualifying expert report.[6] Amjadi asserted that Mandujano had failed to serve him with Dr. Kaplan's curriculum vitae, and he argued that Kaplan's report does not qualify as an expert report because it is "conclusory as to breach of the standard[s] of care and proximate cause."

After the deadline to file her expert report had expired, Mandujano, on March 1, 2013, served Dr. Amjadi with Dr. Kaplan's curriculum vitae. In her response to Amjadi's motion to dismiss, Mandujano asserted that she inadvertently did not include Kaplan's curriculum vitae when she served Amjadi with Kaplan's expert report, and she moved "for an extension to file the expert report and

---

[6] *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, §§ 1–3, 2005 Tex. Gen. Laws 1590, 1590 (amended 2013).

curriculum vitae."[7]  She asserted that "Kaplan's expert report represents an objective good faith effort to comply with the definition of an expert report."

On March 15, 2013, the trial court held a hearing on Dr. Amjadi's motion to dismiss.  Although the hearing was not recorded and a written order does not appear in the record, the parties agree that the trial court granted Mandujano's request for a thirty-day extension to file the expert report and curriculum vitae.  However, the parties dispute the basis upon which the trial court granted the extension.[8]

Dr. Amjadi filed a second motion to dismiss on April 17, 2013.  At a hearing on the motion, Amjadi conceded on the record that his prior objection that Mandujano had not served him with Dr. Kaplan's curriculum vitae had been cured. He argued, however, that her claim still had to be dismissed because, although the trial court had "previously granted an extension to cure deficiencies in the report," she had failed to file a "curative report."  The trial court then explained that it had not found Kaplan's expert report to be deficient.  Rather, it concluded that Kaplan's report "gave [Amjadi] fair notice of what [the] claims were [and] the standards of care violated."  Thus, the trial court had given Mandujano "the option

---

[7] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (Vernon Supp. 2013) (providing for one thirty-day extension to cure deficiencies in expert report).

[8] Mandujano argues that the trial court granted the extension because she inadvertently did not attach Dr. Kaplan's curriculum vitae to the report when she served it on Dr. Amjadi.  Amjadi argues that the trial court granted the extension because it found that Kaplan's expert report was substantively deficient.

6

to supplement that report if she wanted to do so." The trial court concluded that although Mandujano had chosen not to supplement Kaplan's expert report, his report was adequate. And it denied Amjadi's motion to dismiss.

## Standard of Review

We review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). When reviewing matters committed to a trial court's discretion, we may not substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Harris Cnty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

## Sufficiency of Expert Report

In his second issue, Dr. Amjadi argues that the trial court erred in denying his motion to dismiss Mandujano's health care liability claims because her expert report "did not set forth a specific breach of the standard of care" by Amjadi and

7

"does not connect [Amjadi's] alleged negligence to the damages."[9]  And "to the extent it addressed any of these elements, it was conclusory and insufficient."

A health care liability claimant must timely provide each defendant health care provider with an expert report.[10]  *See Gray*, 189 S.W.3d at 858.  The expert report must provide a "fair summary" of the expert's opinions as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (Vernon Supp. 2013).

If a defendant files a motion to dismiss challenging the adequacy of the claimant's expert report, a trial court shall grant the motion to dismiss only if it appears to the court, after a hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report.  *Id*. § 74.351(l); *Scoresby v. Santillan*, 346 S.W.3d 546, 554–56 (Tex. 2011).  In setting out the expert's opinions, the report must provide enough information to fulfill two

---

[9]  Although Dr. Amjadi argues on appeal that Dr. Kaplan's statement of the standard of care is deficient, Amjadi did not raise this issue in the trial court in his motion to dismiss.  Accordingly, the issue is not preserved for review on appeal.  *See* TEX. R. APP. P. 33.1.  Further, Amjadi did not argue in the trial court and does not argue on appeal that Kaplan's report is deficient with regard to Mandujano's claim of fraudulent misrepresentation or her alternative claims of lack of informed consent and violations of the Texas Deceptive Trade Practices Act.  Thus, the issue on appeal is confined to Mandujano's negligence claim.

[10]  *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, §§ 1–3, 2005 Tex. Gen. Laws 1590, 1590 (amended 2013).

purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Scoresby*, 346 S.W.3d at 556 (citing *Palacios*, 46 S.W.3d at 879).

### Breach of the Standards of Care

Dr. Amjadi first argues that Dr. Kaplan's report is deficient as to the element of breach because he "simply concludes that the standard[s] of care [were] not met due to the results of surgery, without saying that [Amjadi] was negligent in causing those results." He asserts that "the report does not state what [he] should have done differently."

"Identifying the standard of care in a health care liability claim is critical: whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently." *Palacios*, 46 S.W.3d at 880. As stated, an expert report must provide a "fair summary" of the expert's opinion regarding the applicable standards of care and the manner in which the care rendered by the physician or health care provider failed to meet the standards. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). "While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached," it "must set out what care was expected, but not given." *Palacios*, 46 S.W.3d at 880.

9

In his report, Dr. Kaplan explains that "[t]he ordinary standard of care for a bilateral mastopexy" is for a plastic surgeon to place breasts symmetrically, with normal nipple/areolar complex centralized on the breast mound." Further, "[t]he ordinary standard of care for an abdominoplasty procedure" requires a plastic surgeon to make an

> Incision . . . after marking the patient in the upright standing position just above the pubis hairline extending laterally to just above or below the anterior iliac crest, whichever is the patient's choice. Then the skin and subcutaneous tissue is raised, the muscles are repaired and removal of excess skin takes place. The placement of the umbilicus is then pulled through a new opening on the abdominal wall.

Thus, Kaplan clearly identifies the pertinent standards of care for a bilateral mastopexy and an abdominoplasty.

Dr. Kaplan opines that "[Dr. Amjadi] did not meet the standard of care" for a bilateral mastopexy because he "failed to place the nipple areolar complex on the breast mound symmetrically." Regarding the abdominoplasty, Kaplan explains that Amjadi "failed to place the incision low enough to be concealed" by clothing and "left excess skin." He further opines that, "in terms of reasonable medical probability and based on [his] review of the medical records as well as [his] education, training, and experience, that the treatment provided by Dr. Amjadi was below the accepted standards of care."

Dr. Amjadi asserts that Dr. Kaplan's report is like "the one declared inadequate" in *Shaw v. BMW Healthcare*, 100 S.W.3d 8 (Tex. App.—Tyler 2002,

10

pet. denied). In *Shaw*, however, the expert merely opined that the injection of sedatives "contributed to [the patient's] mental deterioration and may have indirectly contributed to his death," the injection was an "excessive dosage," and the expert "would have started him off on a much lower dose." *Id.* at 12–13. The court concluded, and the plaintiffs conceded, that the expert report "did not delineate any standards of care that should have been followed." *Id.* at 13. Here, unlike the expert in *Shaw*, Kaplan identifies the pertinent standards of care that Amjadi should have followed.

Dr. Amjadi also asserts that Dr. Kaplan "opines that he believes the treatment by Dr. Amjadi was below the standard of care, but he never discusses how or why that is so," citing *Villa v. Hargrove*, 110 S.W.3d 74 (Tex. App.—San Antonio 2003, pet. denied). In *Villa*, however, the expert report failed to "iterate the applicable standard of care," did not "describe the procedures that should be followed," and failed "to describe [the patient's] condition at all." *Id.* at 78–79. In contrast, Kaplan's report describes the procedures that should have been followed and describes Mandujano's condition.

The trial court could have reasonably concluded that Dr. Kaplan's report represents a "good faith effort" to inform Dr. Amjadi of the specific conduct called into question, the standards of care that should have been followed, and what he should have done differently. *See Palacios*, 46 S.W.3d at 880. Accordingly, we

11

hold that the trial court did not err in denying Amjadi's motion to dismiss Mandujano's health care liability claims on the ground that Kaplan's expert report does not identify any breaches of the standards of care.

*Causation*

Dr. Amjadi also argues that Dr. Kaplan "does not state in his report that any alleged act or omission . . . proximately caused [Mandujano's'] alleged injuries or damages" because Kaplan "simply concludes that [Mandujano] had a less than optimal result from surgery." Amjadi asserts that Kaplan fails to "explain how [his] alleged negligence caused those results" and "mentions problems that may (or may not) . . . have been present before surgery."

An expert report must provide a fair summary of the expert's opinions regarding the causal relationship between the failure of the health care provider to provide care in accord with the pertinent standard of care and the injury, harm, or damages claimed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). "No particular words or formality are required [in the expert report], but bare conclusions will not suffice." *Scoresby*, 346 S.W.3d at 556. The expert must provide some basis that an act or omission of a defendant proximately caused injury. *Wright*, 79 S.W.3d at 53. In assessing the sufficiency of the report, a trial court may not draw inferences; instead, it must exclusively rely upon the information contained within the four corners of the report. *Id.* at 52; *see also*

12

*Granbury Minor Emergency Clinic v. Thiel*, 296 S.W.3d 261, 265 (Tex. App.—Fort Worth 2009, no pet.) (noting that nothing in section 74.351 prohibits experts, as opposed to courts, from making inferences based on medical history, citing TEX. R. EVID. 705 (providing that expert may testify in terms of opinions and inferences)).

Here, Dr. Kaplan, in his report, states that, in forming his opinions, he reviewed Dr. Amjadi's pre-operative photographs of Mandujano, as well as his historical, operative, and progressive notes. Kaplan also reviewed a global imaging report and photographs taken of Mandujano after the surgery. A causal relationship between Amjadi's failure to adhere to the standards of care in performing the surgical procedures and the resulting injuries to Mandujano is indicated by Kaplan's statements that Amjadi, in regard to the standards of care, failed to symmetrically place the nipple areolar complexes and remove excess areolar tissue, and Mandujano now has "asymmetric breasts," "malposition of the nipple areolar complex," and "areolar tissue" left "on both of her vertical incisions." Further, a causal relationship between Amjadi's failure to adhere to the standards of care in performing the surgical procedures and the resulting injuries to Mandujano is indicated by Kaplan's statements that Amjadi failed to adhere to the standards of care in performing the mastopexy and abdominoplasty procedures,

and Mandujano now has "hypertrophic painful scarring on both breasts and the abdominoplasty incisions."

Although, as Dr. Amjadi asserts, Dr. Kaplan does not use the term "causation," "magic words" are not required. *See Wright*, 79 S.W.3d at 53. Kaplan must merely provide "some basis" that an act or omission by Amjadi proximately caused Mandujano's injuries. *See id.* Here, Kaplan's report describes Amjadi's specific conduct and informs him of the behavior in question, and it allowed the trial court to determine whether Mandujano's allegations have merit. *See Scoresby*, 346 S.W.3d at 555–56 (citing *Palacios*, 46 S.W.3d at 879).

In support of his assertion that Dr. Kaplan has done nothing more than say "injuries occurred after surgery without saying how or why," Dr. Amjadi relies on *Windsor v. Maxwell*, 121 S.W.3d 42 (Tex. App.—Fort Worth 2003, pet. denied). In *Windsor*, the court emphasized that an expert report is sufficient if it contains information summarizing and explaining the causal relationship between a doctor's failure to meet the applicable standards of care and the plaintiff's injury. *Id*. at 47–48 (citing *Wright*, 79 S.W.3d at 53). There, however, "the closest [the expert] came to voicing an opinion on the issue of causation is contained in one sentence of the report: '[t]he patient has reported that consent was withdrawn to the procedure and that the procedure continued despite such withdrawal of consent, with subsequent infarction documented above.'" *Id*. at 48. The court concluded

14

that the trial court acted within its discretion when it concluded that the expert report was deficient as to the causation element. *Id*. In contrast, Dr. Kaplan's report contains information summarizing and explaining the causal relationship between Dr. Amjadi's failure to meet the applicable standards of care and Mandujano's injury.

The trial court could have reasonably concluded that Dr. Kaplan's report represents a "good faith effort" to inform Dr. Amjadi of the causal relationship between his failure to provide care in accord with the pertinent standards of care and the injury, harm, or damages claimed. *See Palacios*, 46 S.W.3d at 879; *Kelly v. Rendon*, 255 S.W.3d 665, 679 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (emphasizing that expert reports "are simply a preliminary method to show a plaintiff has a viable cause of action that is not frivolous or without expert support"). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Wright*, 79 S.W.3d at 52. Accordingly, we hold that the trial court did not err in denying Amjadi's motion to dismiss Mandujano's health care liability claims on the ground that Kaplan's expert report does not adequately address the element of causation.

We overrule Dr. Amjadi's second issue.

15

## Extension of Time

In his first issue, Dr. Amjadi argues that the trial court erred in denying his motion to dismiss because, after the trial court granted Mandujano's motion for extension of time to file a qualifying report, she failed to file a "curative expert report." Having concluded that Dr. Kaplan's expert report is sufficient, we do not reach this issue. Moreover, the record shows that the trial court expressly concluded that Dr. Kaplan's expert report is adequate and an amended expert report was not required.

## Conclusion

We affirm the order of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Sharp, and Brown.