

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00155-CV

**ANA MARIA GONZALEZ SALAIS, INDIVIDUALLY
AND AS REPRESENTATIVE OF THE ESTATE
OF RUBEN GONZALEZ, DECEASED,**

                                        **Appellants**

 **v.**

**TEXAS DEPARTMENT OF AGING
& DISABILITY SERVICES,**

                                        **Appellee**

From the 77th District Court
Limestone County, Texas
Trial Court No. 28901A

## O P I N I O N

Ana Maria Gonzalez Salais appeals the trial court's order dismissing her health-care liability claim against the Texas Department of Aging and Disability Services (TDADS).

Salais's live petition alleges that her son Ruben Gonzalez was a patient at the Mexia State School, a TDADS facility, because of his developmental disability. Late one

evening (after midnight), Ruben had refused to go to bed and was then physically restrained by Sheri Thornton and Charles Korn, two TDADS employees. After Joel Thomas, a third employee, arrived, they placed Ruben on a restraint board. Sue Sanderson, a TDADS nurse, was called to the scene and found Ruben pale with no pulse or blood pressure. Sanderson was unable to resuscitate Ruben. An automated external defibrillator (AED) was employed, but it was not used to shock Ruben. Paramedics arrived and their monitor showed a flat line and no cardiac rhythm. Ruben was taken to a hospital, where he was pronounced dead.

Salais also pleads:

> In the Prevention & Management of Aggressive Behavior Course Synopsis allegedly provided by Defendant Mexia [State School] to its employees, employees are warned that "[e]xtreme care must be exercised during any horizontal restraint to insure that the person's ability to breathe is not restricted. . . . [D]uring all horizontal restraints, the person must remain in a side-lying position and monitored continuously. Failure to do so may risk serious injury and death from positional asphyxia, [which] occurs when there is insufficient intake of oxygen as a result of body positioning that interferes with one's ability to breathe." [Ellipsis and brackets in original].

She further pleads that the "Mexia State School Annual Retraining Course Synopsis," allegedly provided to every participant, gives the same warning and also provides "that the person who is restraining the lower body has an important role in monitoring breathing, circulation, and general condition of the restrained individual, and in assisting in maintaining the restrained individual in a side-lying position."

In her health-care liability cause of action, Salais alleges that TDADS [Mexia State School] and TDADS employees Korn, Thornton, and Thomas were negligent in the care

and treatment of Ruben in each of the following ways:

1. Failure to recognize and/or appreciate the risk factors for the potential occurrence of death when performing a physical restraint;

2. Misuse of the restraints and restraint board when performing a physical restraint;

3. Failure to anticipate the risk of traumatic asphyxia when performing a physical restraint;

4. Failure to plan the physical restraint according to the increased risk for serious injury to Decedent;

5. Inappropriate management of the complication of performing a physical restraint;

6. Failure to have the requisite knowledge regarding appropriate responses to a combative physical restraint;

7. Failure to perform the appropriate interventions during the physical restraint of Decedent once health complications were encountered;

8. Failure to provide proper education and training to employees who were called upon to assist in the restraint of Decedent.

Section 74.351 of the Civil Practices and Remedies Code provides that within 120 days of filing suit, a claimant must serve a curriculum vitae (CV) and one or more expert reports regarding every defendant against whom a health care claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp. 2009). Salais provided two expert reports. One report was by James Wohlers, a paramedic, which addresses the standard of care and breach elements relating to the use of the restraint board and the AED. The other report, of Donald Winston, M.D., addresses the causation element.

TDADS objected to the reports and moved to dismiss Salais's health-care liability claim under section 74.351. *See id.* The motion asserted that Salais's experts were not

qualified and that their reports were inadequate. The trial court granted TDADS's motion to dismiss without stating any grounds. In her first issue, Salais argues that the trial court erred in granting TDADS's motion to dismiss.

We review the trial court's decision to dismiss a health-care liability claim by the abuse-of-discretion standard. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex. 2001). Also, a trial court's decision on whether a person is qualified to offer an expert opinion in a health-care liability claim is reviewed under the abuse-of-discretion standard. *Moore v. Gatica,* 269 S.W.3d 134, 139 (Tex. App.—Fort Worth 2008, pet. denied). "However, a trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992). A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id."* *Austin Heart, P.A. v. Webb,* 228 S.W.3d 276, 279-80 (Tex. App.—Austin 2007, no pet.); *see also Methodist Hosp. v. Shepherd-Sherman,* 296 S.W.3d 193, 197 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("Though we may not substitute our judgment for that of the trial court, the trial court has no discretion in determining what the law is or applying the law to the facts.").

**Wohlers Report**

*Qualifications*

TDADS's motion to dismiss and brief assert that Wohlers's report and CV do not establish his qualifications to testify about the standards of care applicable to the Mexia State School healthcare staff or to the treatment for individuals with behavioral, mental, and developmental disabilities. Its brief also asserts that Wohlers's report does not

show that the "management and care" of Ruben on the occasion in question is "something universally done."

Regarding his qualifications, Wohlers's report states:

> I received my paramedic education from Creighton University in 1992. Initially I was a paramedic in Omaha, Nebraska from 1992 to 1996, then a paramedic for the City and County of Denver from 1996 until 2000. Since 2000, I have been with the Grand Island Fire Department in Grand Island, Nebraska as a paramedic/firefighter. I have also been involved in restraint asphyxia education since 2006. I teach to EMS, Law Enforcement and persons involved in the restraining of combative persons. I have been qualified as an expert in the field of restraint asphyxia.

Wohlers's CV restates the above history and notes his certification as an EMS instructor and that he specializes in "restraint-related issues" and instructs on Advanced Life Support and Basic Life Support topics. His report further states:

> I am familiar with the standard of care for restraining a combative person and understand what steps should be taken to monitor for respiratory distress. Through my education, background and experience, I am knowledgeable in the standard of care that the staff of Mexia State School should have provided to Mr. Gonzales on the night he died.

On the issue of Wohlers's qualifications, we turn to the applicable statute, section 74.402, which provides in pertinent part:

> (b) In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:

> (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

> (2) has knowledge of accepted standards of care for health care

providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

      (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

(c) In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

      (1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and

      (2) is actively practicing health care in rendering health care services relevant to the claim.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b, c) (Vernon 2005).

We disagree that Wohlers was required to be qualified in general as an expert about the standards of care applicable to the Mexia State School healthcare staff for the care and treatment for individuals with behavioral, mental, and developmental disabilities. Rather, under the literal language of subsections 74.402(b)(1, 2), Wohlers is only required to be practicing health care in a field of practice that involves *the same type of care or treatment* as that delivered by the defendant health care provider and have knowledge of the accepted standards of care for health care providers for *the care or treatment of the condition involved in the claim. See id.* § 74.402(b)(1, 2); *see, e.g., Group v. Vicento,* 164 S.W.3d 724, 730-31 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Based on Salais's allegations and the information in Wohlers's report, the type of care or treatment and the condition involved is the use of physical restraint and a restraint board on a combative person. Wohlers's report and CV show that he is a certified

practitioner and instructor in health care services relevant to the health-care liability claim in this case; he has been a paramedic since 1992 and has been instructing on restraint asphyxia since 2006, including teaching persons involved in the restraining of combative persons. His report states that he is familiar with the standard of care for restraining a combative person and is knowledgeable of the standard of care that the staff of Mexia State School should have provided to Ruben on the night he died with respect to the use of physical restraint and a restraint board.

Under the applicable criteria in section 74.402(b), Wohlers's report and CV demonstrate that he is qualified to offer an expert opinion on the accepted standards of care for this type of care or treatment by TDADS healthcare staff of combative persons. To the extent the trial court concluded otherwise, the trial court abused its discretion.

*Adequacy*

TDADS's motion to dismiss asserted that Wohlers's report is inadequate because it does not articulate the relevant standard of care and/or the bases for the relevant standards of care applicable to TDADS and it does not specifically state the manner in which TDADS breached the applicable standard of care.

When considering a motion to dismiss under subsection 74.351(b), the issue is whether the report represents a good-faith effort to comply with the statutory definition of an expert report. *See Bowie Mem. Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Palacios*, 46 S.W.3d at 878. An "expert report" is "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or

health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

In determining whether the report represents a good-faith effort, the inquiry is limited to the four corners of the report. *Palacios*, 46 S.W.3d at 878. The report need only represent a good-faith effort to provide a fair summary of the expert's opinions. *Id.* The report does not have to marshal all of the plaintiff's proof and the plaintiff need not present evidence in the report as if it were actually litigating the merits. *Id.* at 879. Rather, to constitute a good-faith effort, the report must address the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff calls into question and to provide a basis for the trial court to conclude that the claims have merit. *Id.* at 875.

The Wohlers report notes that he has been qualified as an expert in restraint asphyxia. It cites an investigative report that he reviewed and details the course of events and the conduct of three employees (Thomas, Korn, and Thornton) in placing Ruben on a restraint board and, according to Thomas, using a restraint strap across his diaphragm, after which Ruben "was breathing hard, in gasps, and making gurgling sounds." According to Korn, a restraint strap was across Ruben's chest, and Korn observed only a "slight rise" in his chest; Ruben had a weak pulse. Thornton observed Ruben on the restraint board and thought he was asleep, but he looked "funny" and was breathing shallow. Nurse Sanderson arrived, and after finding Ruben's color to be abnormally pale, no blood pressure, and no pulse, she initiated CPR and attempted to

use an AED. Mexia Fire/EMS then arrived, took over CPR, and did an endotracheal intubation before transferring Ruben to Parkview Regional Hospital, where he was pronounced dead. Wohlers states:

> I am familiar with the standard of care for restraining a combative person and understand what steps should be taken to monitor for respiratory distress. Through my education, background and experience, I am knowledgeable in the standard of care that the staff of Mexia State School should have provided to Mr. Gonzalez on the night he died.

> The standard of care requires that if any one of the persons involved in the restraining of Mr. Gonzalez had recognized that he was in respiratory distress, he should not have been placed on a restraint board and had straps placed across his chest. Had anyone of the restrainers prevented the application of the restraint board, it is more likely than not that Mr. Gonzalez would not have suffered restraint asphyxia. No one intervened in the application of the restraint board.

Wohlers's report sets forth his familiarity with the standard of care and the basis therefor, what the standard of care is, and how the TDADS staff breached it on the occasion in question. The report addresses the standard of care and breach with sufficient specificity to inform TDADS of the conduct that Salais calls into question and provides a basis for the trial court to conclude that the claims have merit. *See Palacios*, 46 S.W.3d at 875. It informs TDADS "what care was expected but not given." *Fagadau v. Wenkstern*, 311 S.W.3d 132, 138 (Tex. App.—Dallas 2010, no pet. h.) (citing *Palacios*, 46 S.W.3d at 880). To the extent the trial court concluded otherwise, the trial court abused its discretion.

### Dr. Winston Report

Section 74.351(i) permits a claimant to satisfy any requirement of section 74.351 for serving an expert report by serving reports of separate experts. TEX. CIV. PRAC. &

REM. CODE ANN. § 74.351(i); *see Packard v. Guerra*, 252 S.W.3d 511, 527 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Expert reports can be considered together in determining whether the plaintiff in a health care liability action has provided adequate expert opinion regarding the standard of care, breach, and causation. *See Walgreen Co. v. Hieger*, 243 S.W.3d 183, 186 n.2 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Martin v. Abilene Regional Med. Center*, No. 11-04-00303-CV, 2006 WL 241509, at *4-5 (Tex. App.—Eastland Feb. 2, 2006, no pet.) (mem. op.). A physician's report on causation should not be read in isolation. *See Martin*, 2006 WL 241509, at *4; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C) (providing that only a physician can be an expert giving opinion testimony on causal relationship).

*Qualifications*

TDADS's motion to dismiss and brief assert that Dr. Winston's report and CV do not establish his qualifications to testify about causation. Its brief first asserts that there is no showing that Dr. Winston is a licensed physician. "Expert" means, "with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C) (Vernon Supp. 2009); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a) (Vernon 2005).

Dr. Winston's report is in a letter format, and his letterhead and typed signature block identify him as "Donald Winston, MD." His letterhead also reveals his website

(www.urbansurgeon.com) and his email address at that website. Furthermore, his December 2008 CV reflects that he is a licensed Texas physician (No. F0832, licensed in February 1978 and expiring May 31, 2010). TDADS's assertion that there is no showing that Dr. Winston is a licensed physician is incorrect.

Dr. Winston's report is a letter to Salais's attorney and states in its entirety:

At your request, I have reviewed an autopsy report and death certificate of Ruben Gonzales, a 15 year old Hispanic male who apparently was a student at the Mexia State School.

I have no way of knowing exactly what took place on or about January 15, 2007, but I have reviewed a Third Amended Petition in Cause 28901A which states that three employees of Mexia State School physically restrained Mr. Gonzales. After a period of time, a nurse at the hospital found Mr. Gonzales dead. Resuscitation failed, and after endotrachial [sic] intubation by Mexia Fire Department EMS, he was taken to Parkview Regional Hospital where he was pronounced dead.

My focus is on the Autopsy report in Case No. JP0187-07-0120ACG done January 16th 2007.

I agree with the physical findings of:
1. Petechiae in the right and left conjunctivae
2. Contusions to the right arm and left leg
3. Subcutaneous hemorrhage on the upper back and lower back
4. Two subgaleal hemorrhages
5. Abrasions and contusions on face and arms
6. Mechanical asphyxia

I disagree with the final opinion of the nine pathologists to the extent that there is evidence that Mr. Gonzales in any way contributed to his own death, but I agree that his death was a homicide caused by restraint and mechanical asphyxia imposed on him by the three Mexia State School employees.

If you have any other questions, please feel free to contact me.[1]

---

[1] To the extent that Salais has asserted a health-care liability claim based on alleged misuse of the AED (it is in the Wohlers report, but it is not pleaded by Salais), there is "no report" at all as to causation, and the

TDADS is correct that Dr. Winston's *report* fails to show how he is qualified to render an expert opinion on causation in this case. Rule 702 of the Texas Rules of Evidence requires that an expert be qualified by "knowledge, skill, experience, training, or education." TEX. R. EVID. 702. The qualifications of an expert must appear in the report itself and cannot be inferred. *See Benson v. Hall*, No. 10-09-00284-CV, 2010 WL 376957, at *1 (Tex. App.—Waco Feb. 3, 2010, no pet. h.); *Estorque v. Schafer*, 302 S.W.3d 19, 26 (Tex. App.—Fort Worth 2009, no pet.); *Philipp v. McCreedy*, 298 S.W.3d 682, 686 (Tex. App.—San Antonio 2009, no pet.); *Baylor College of Medicine v. Pokluda*, 283 S.W.3d 110, 117 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Hansen v. Starr*, 123 S.W.3d 13, 19 (Tex. App.—Dallas 2003, pet. denied). Dr. Winston's report does not set forth his qualifications at all. His CV reflects that he is currently practicing in the field of emergency medicine in Houston and has held several positions as an emergency medicine physician and a general and trauma surgeon. Aside from their not being in the report itself, these position descriptions alone are inadequate to show how Dr. Winston is qualified to opine on the causal relationship of Ruben's death. Merely being a physician is insufficient to qualify as a medical expert. *See Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996); *Hagedorn v. Tisdale*, 73 S.W.3d 341, 350 (Tex. App.—Amarillo 2002, no pet.).

Because there is no showing in Dr. Winston's report that he is qualified to give an expert opinion on causation, to the extent the trial court granted the motion to

---

trial court properly dismissed that part of the health-care liability claim. *See Benson v. Vernon*, 303 S.W.3d 755, 760-61 (Tex. App.—Waco 2009, no pet.).

dismiss on this basis, it did not abuse its discretion. We overrule Salais's first issue.

*Adequacy*

Because of our disposition of the second issue, we must address TDADS's challenge to the adequacy of Dr. Winston's report in its motion to dismiss. On the adequacy of Dr. Winston's report, we are precluded "from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended." *Austin Heart,* 228 S.W.3d at 279. But here, there is no gap, and there is no guessing, that Dr. Winston's opinion on the cause of Ruben's death—"restraint and mechanical asphyxia imposed on him by the three Mexia State School employees"—*is the same conduct* referred to in the Wohlers report as being the three Mexia State School employees' breach of the standard of care in restraining a person in respiratory distress.

When the reports are read together, as they must be in this case, they satisfy the causal-relationship requirement because they constitute a good-faith effort to provide a fair summary of the causal relationship between the employees' conduct and Ruben's death by restraint asphyxia. *See Martin,* 2006 WL 241509, at *5. Read together, they provide "enough information linking the defendant's breach of the standard of care to the plaintiff's injury." *Baker v. Gomez,* 276 S.W.3d 1, 8 (Tex. App.—El Paso 2008, pet. denied). And because Dr. Winston's report does link the employees' conduct with Gonzalez's death, TDADS's reliance on *Bogar v. Esparza* and *Shaw v. BMW Healthcare, Inc.* is misplaced, as those cases are distinguishable on that basis. *Cf. Bogar v. Esparza,* 257 S.W.3d 354, 364 (Tex. App.—Austin 2008, no pet.) ("In essence, Dr. Adame's report is a second autopsy report, opining about the cause of Ms. Guerrero's death *without*

*explaining who caused it or how*.") (emphasis added); *Shaw v. BMW Healthcare, Inc.*, 100 S.W.3d 8, 12-13 (Tex. App.—Tyler 2002, pet. denied) (op. on reh'g) ("An opinion solely addressing the cause of death does not satisfy the statutory requirements.").

### Extension

Subsection 74.351(c) provides: "If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). In her second issue, Salais asserts that the trial court abused its discretion in not granting her alternative motion for a thirty-day extension to cure her expert report's deficiency.

The docket sheet appears to reflect the trial court's denial of that motion, but docket-sheet entries are not "of-record" rulings. Any order or judgment, to be effective, must be entered of record. *Kocman v. Kocman*, 581 S.W.2d 516, 518 (Tex. Civ. App.— Waco 1979, no writ); *see also Willis v. Nucor Corp.*, 282 S.W.3d 536, 543 (Tex. App.—Waco 2008, no pet.).

Dr. Winston's report is technically deficient—as opposed to being "no report"— because the report lacks his qualifications to give an expert opinion on causation. It is thus appropriate to remand this case to the trial court so it can exercise its discretion whether to grant a thirty-day extension so that Salais can attempt to cure this deficiency. *See Austin Heart*, 228 S.W.3d at 284-85; *see also In re Buster*, 275 S.W.3d 475, 477 (Tex. 2008) ("A report by an unqualified expert will sometimes (though not always) reflect a good-faith effort sufficient to justify a 30-day extension.").

Accordingly, we sustain the second issue and remand this cause to the trial court with the instruction to consider and rule on Salais's motion for a thirty-day extension to attempt to cure the deficiency in Dr. Winston's report.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
     (Chief Justice Gray dissenting)
Reversed and remanded
Opinion delivered and filed August 4, 2010
[CV06]