**CONCUR and DISSENT; and Opinion Filed August 31, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-01373-CV

**JSC LAKE HIGHLANDS OPERATIONS, LP D/B/A VILLAGES OF LAKE HIGHLANDS,
METROSTAT DIAGNOSTIC SERVICES, INC.,
RICHARD M. WILLIAMS, M.D., AND RICHARD M. WILLIAMS, M.D., P.L.L.C.,
Appellants
V.
KAREN MILLER, INDIVIDUALLY
AND AS REPRESENTATIVE OF THE ESTATE OF BETTY RUTH HATHCOCK,
AND BETTY CROCKETT, INDIVIDUALLY, Appellees**

**On Appeal from the County Court at Law No. 3
Dallas County, Texas
Trial Court Cause No. CC-15-00297-C**

## CONCURRING AND DISSENTING OPINION
Opinion by Justice O'Neill[1]

The majority reverses the trial court's order denying chapter 74 motions to dismiss filed by all appellants. I would conclude the trial court correctly found appellees' expert reports sufficient as to appellants Richard M. Williams, M.D. and Richard M. Williams, M.D., P.L.L.C. (together, Williams) on the issue of causation. Although I respectfully dissent to the majority's resolution of the claims against Williams, I join the majority's opinion in all other respects.

---

[1] The Hon. Michael J. O'Neill, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

**Background Involving Williams**

Appellee Betty Ruth Hathcock was a patient at the nursing home operated by appellant JSC Lake Highlands Operations, LP d/b/a Villages of Lake Highlands. Over the course of the day on March 22, 2013, Hathcock developed a raspy voice and a cough. At 8:00 p.m., the nursing home's on-call physician ordered a "stat" chest X-ray. A radiology technician from appellant Metrostat Diagnostic Services, Inc. came to the nursing home and took frontal and lateral view chest X-rays shortly after 9:30 p.m.[2] The reason given for the procedure was a "Cough."

The films were forwarded to Williams, and his interpretation of the X-rays was transcribed at 11:51 p.m.:

> Findings: The heart is normal in size and configuration. The aorta and other mediastinal structures are in the midline. There is bilateral lower lobe infiltrate. Impression: Bilateral lower lobe infiltrate report 3-22-13 at 9:37 p.m.

Williams did not identify the foreign object—a dental implant—lodged in Hathcock's trachea. He did not contact Metrostat or JSC Highlands concerning a need for Hathcock to receive urgent treatment to remove the implant.

The next morning at approximately 7:00 a.m., more than seven hours after Williams reviewed her X-rays, Hathcock was discovered unresponsive. She was taken by ambulance to an emergency room, where the implant was discovered when providers attempted to intubate her. Hathcock never recovered consciousness and died later that afternoon.

---

[2] Reports indicate the X-rays taken by Metrostat are time-stamped 9:51 a.m. The reason for the discrepancy is unclear. All parties agree the X-rays were taken during the evening of March 22, not the next morning.

**Standard of Review**

This court must review a trial court's ruling concerning the adequacy of an expert report under an abuse of discretion standard. *Am. Transitional Care Ctrs. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion only if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *See Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). A trial court does not abuse its discretion merely because its discretionary decision is different from what an appellate court's disposition would be under similar circumstances. *See Downer v. Aquamarine Operators, Inc*., 701 S.W.2d 238, 241–42 (Tex. 1985).

**Expert Reports on Causation**

Williams raises a single issue on appeal. He argues the trial court abused its discretion by failing to grant Williams's motion to dismiss because appellees' expert reports were deficient on the issue of causation. The majority agrees with Williams. It concludes the reports of Dr. Ravi Patel and Dr. David Naeger are insufficient standing alone to satisfy chapter 74's causation standard, and it is "unpersuaded" that these reports should be read together to fulfill the statute's requirements. I would conclude settled chapter 74 law, applied and evaluated according to our standard of review, calls for a different result.

*Patel's Expert Report*

Patel was Hathcock's treating physician in the emergency room. Patel explains in his expert report that Hathcock's denture implant was found in the back of her mouth when she arrived at the hospital. As the majority sets forth, his report contains the following opinions:

> Ms. Hathcock expired on March 24, 2013. Her final diagnosis was cardiorespiratory failure second to anoxic brain injury secondary to cardiac arrest.

–3–

> Had the lodged denture implant been timely discovered, and had she received appropriate treatment to remove the denture implant at an earlier stage, it is reasonably medically probable that Ms. Hathcock would have survived.

> It is my medical opinion, based upon my care and treatment of Ms. Hathcock and in all reasonable medical probability, that the denture implant lodged in the throat/trachea area of her airway was the cause of the aspiration, which produced the pulmonary edema and pneumothorax which, collectively, was a proximate cause of her death.

The majority addresses Patel's report at the outset of its opinion and concludes that, standing alone, it is "deficient for causation" because it does not explain what conduct is attributable to any of the appellants.

The majority goes on to refuse—for the same reason—to read Patel's report in conjunction with any other report in the case. The majority relies on two cases, both of which involve an expert report that fails to identify a defendant responsible for the conduct charged as negligence. Neither case, however, supports dismissing Patel's opinion for all purposes as the majority has done. First, the majority cites *Bogar v. Esparza*, 257 S.W.3d 354 (Tex. App.—Austin 2008, no pet.), and states "because we cannot determine whose conduct Dr. Patel's causation opinion implicates, we must conclude the report is insufficient to establish the same." In *Bogar*, however, only one expert report was served for all purposes; that case cannot support a refusal to read reports together merely because one of them does not identify a defendant at fault. *See id.* at 358. The second case is *Tenet Hospitals Ltd. v. De La Riva*, 351 S.W.3d 398 (Tex. App.—El Paso 2011, no pet.), which did involve multiple reports. However, the El Paso court did not refuse to read other reports along with the one that did not identify a particular defendant's conduct. Instead, the court addressed each of the remaining reports in an effort to

–4–

remedy the deficiency in the first report, but it found each of the remaining authors to be unqualified to opine concerning the causation in the case.[3] *Id.* at 405–07.

By dismissing Patel's report in its entirety, the majority ignores the often-repeated admonition against reading an expert report in isolation. *See, e.g.*, *Salais v. Tex. Dep't of Aging & Disability Servs.*, 323 S.W.3d 527, 534 (Tex. App.—Waco 2010, pet. denied) ("A physician's report on causation should not be read in isolation."); *see also San Jacinto Methodist Hosp. v. McCoy*, No. 14-12-00682-CV, 2013 WL 3009318, at *3–4 (Tex. App.—Houston [14th Dist.] June 13, 2013, no pet.) (mem. op.) ("When determining whether expert reports represent a good-faith effort to satisfy the statutory requirements, we consider them cumulatively rather than in isolation."); *Martin v. Abilene Reg'l Med. Ctr.*, No. 11-04-00303-CV, 2006 WL 241509, at *4 (Tex. App.—Eastland Feb. 2, 2006, no pet.) (mem. op.) ("To the extent that the trial court may have reviewed Dr. Garza's report in isolation, the trial court abused its discretion because Section 74.351(i) expressly provides that a claimant may satisfy any requirement of the Act by providing reports of separate experts."). This is a critical failing because Patel's report does not attempt to resolve the entirety of the causation issue in this case. It does not focus on *who* caused the injury that led to Hathcock's death. Instead, it reports, perhaps better than any retained expert could, *how* the injury caused her death. Patel describes finding the dental implant lodged in Hathcock's trachea. He opines that if the implant had been timely discovered, and if Hathcock had earlier received the appropriate treatment to remove the implant, then she would have survived. Patel traces the damage done by the failure to detect the implant step by step: the implant became lodged in her trachea; this foreign object in her airway caused her aspiration; the

---

[3] The majority also cites *Tenet Hospitals* as authority for a purported requirement that Patel review other expert reports with which his would be read. But Patel's opinions were not derivative of or based on anyone else's reports; they were based on his own observation and treatment of Hathcock. On the contrary, in this case, Patel's records were reviewed by the other experts opining concerning Hathcock's treatment in the emergency room and her death.

aspiration caused fluid to collect in her lungs (pulmonary edema) and her lung to collapse (pneumothorax); and those two conditions ultimately caused her death.

*Naeger's Expert Report*

The second report directed toward Williams's conduct in this case sets forth Naeger's opinions on the appropriate standard of care, Williams's failure to meet that standard, and the cause of Hathcock's aspiration. Addressing the Metrostat X-ray films, Naeger states:

> [I]t is my opinion that it is within the standard of radiologic care to detect and report the high density foreign body which is visualized in the proximal trachea. Further, it is my opinion that such a finding warrants an immediate phone call to the ordering provider given the need for an intervention (foreign object removal) to prevent possible harm.

Naeger confirms that the death certificate's finding of "aspiration" is supported by the Metrostat X-rays, "in which a foreign object is noted in the airway, consistent with a foreign body aspiration." In his conclusion, Naeger opines that Williams failed to meet the minimum standard of radiologic care in:

> Failing to detect and report the high density foreign body which is visualized in the proximal trachea and in the frontal and lateral view chest X-rays dated 3/22/13, 9:51 a.m., [and]

> Failing to contact and alert the ordering provider on an immediate basis of the need for an intervention for removal of a foreign object to prevent possible harm. By not identifying the object and calling the provider, this delayed a timely removal of the foreign body. Not removing the foreign body in a timely manner can lead to aspiration, which can be deadly. Aspiration was listed on Ms. Hathcock's death certificate as one of the "significant conditions contributing to death."

As the majority notes, Williams does not challenge Naeger's standard-of-care opinions. But the majority does challenge the adequacy of Naeger's report as to causation, concluding that Naeger fails to explain how Williams's failure to detect and report the implant resulted in aspiration and, ultimately, in Hathcock's death. The majority concludes Naeger's report is conclusory, and therefore deficient, because it fails to explain the basis of his statements linking his conclusions

–6–

to the facts and fails to establish that Williams's negligent act was a substantial factor in bringing about the harm that befell Hathcock.

I disagree, in the first instance, that Naeger's opinion fails to link Williams's breach (his failure to detect and warn of the lodged implant) with Hathcock's injury (the aspiration). Indeed, Naeger specifically states that the foreign object in Hathcock's airway was already consistent with such an aspiration at the time the X-rays were taken. Moreover, I would conclude Naeger clearly identifies the causal link between Williams's breach and Hathcock's injury: Williams's breach "delayed a timely removal of the foreign body." And then Naeger links that failure to remove the object with the injury: "Not removing the foreign body in a timely manner can lead to aspiration, which can be deadly."[4]

*Reading the Reports Together*

Regardless of the individual merits of the Patel and Naeger reports, I cannot join the majority's refusal to read them together. Chapter 74 has always explicitly allowed expert reports to be considered together. "[A] claimant may satisfy any requirement of this section for serving an expert report by serving reports of separate experts . . . regarding different issues arising from the conduct of a physician." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i) (West Supp. 2015). Thus, a deficiency in one report may be made up in another report. *Caviglia v. Tate*, 365 S.W.3d 804, 809 (Tex. App.—El Paso 2012, no pet.).

Causation may be shown through explanation of a chain of events that begins with the defendant health care provider's negligence and ends in injury to the plaintiff. *Nexion Healthcare Mgmt., Inc. v. Sosa*, No. 05-15-01083-CV, 2016 WL 1457069, at *4 (Tex. App.—Dallas Apr. 12, 2016, no pet.) (mem. op.) (citing *McKellar v. Cervantes*, 367 S.W.3d 478, 485

---

[4] The majority emphasizes the word "can" in each clause of this final sentence and calls the opinion conclusory. The opinion may be equivocal, but it is hardly conclusory.

(Tex. App.—Texarkana 2012, no pet.)).  When the expert reports from Patel and Naeger are read together, such a chain of events is clear:

- At 10:51 p.m., Williams reviews the Metrostat X-rays and fails to detect the foreign object lodged in Hathcock's throat.

- Williams fails to warn Hathcock's providers that immediate intervention is necessary to remove the object.

- Hathcock goes untreated until she arrives at the emergency room shortly before 10:30 a.m. and the dental implant is removed from the back of her mouth.

- During the time the implant remains lodged in her throat, it causes aspiration.

- The aspiration causes fluid to collect in Hathcock's lungs (pulmonary edema) and her lung to collapse (pneumothorax).

- The pulmonary edema and pneumothorax ultimately cause Hathcock's death.

To establish causation in a personal injury case at trial, a plaintiff has a two-step burden: she must prove that (1) the conduct of the defendant caused an event, and (2) this event caused her to suffer compensable injuries.  *Martin v. Commercial Metals Co.*, 138 S.W.3d 619, 625 (Tex. App.—Dallas 2004, no pet.).  Of course, a chapter 74 expert report does not need to marshal all of the plaintiff's proof; the information presented in the report need not meet the same requirements as evidence offered in a trial.  *Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 496 (Tex. App.—Dallas 2010, no pet.).  Nevertheless, in this case, the Naeger report explains how Williams's conduct caused an event:  a foreign object remained lodged in Hathcock's throat because Williams failed to detect it and to warn her caregivers.  Then the Patel report explains how this same event—the undetected foreign object lodged in Hathcock's throat—caused the series of pulmonary issues that eventually caused her death.  The two reports are tied together factually by this identification of the unremedied presence of a foreign object, the dental implant,

in the patient's trachea. And because the reports merge in their understanding of this factual event, Naeger's identification of Williams as the negligent actor remedies any deficiency in Patel's report, and Patel's report provides sufficient detail as to the progressive steps leading to Hathcock's demise. *See Caviglia*, 365 S.W.3d at 809.

I discern no abuse of discretion in the trial court's refusal to dismiss Hathcock's claim against Williams. *See Garcia*, 988 S.W.2d at 222 (court abuses its discretion only if it acts in arbitrary or unreasonable manner without reference to guiding rules or principles). Texas law—beginning with the statute that governs this entire proceeding—permits reading expert reports together to satisfy any requirement regarding an issue arising from the conduct of a physician. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i). Likewise, we are warned against reading, and dismissing, any expert report in isolation. *See Salais*, 323 S.W.3d at 534. Reading Patel's and Naeger's reports together, the trial court could have concluded that Williams's conduct was a substantial factor in bringing about Hathcock's injury, absent which her death would not have occurred. *Nexion Health at Lancaster, Inc. v. Wells*, No. 05-16-00018-CV, 2016 WL 4010834, at *3 (Tex. App.—Dallas July 25, 2016, no pet. h.) (mem. op.). Most importantly, read together, the Patel and Naeger reports satisfy the fundamental requirement of a good-faith report: they inform Williams of the specific conduct Hathcock has called into question, and they provide a basis for the trial court to conclude that her claim against Williams has merit. *See Palacios*, 46 S.W.3d at 879.

**Conclusion**

I would decide appellants Richard M. Williams, M.D. and Richard M. Williams, M.D., P.L.L.C.'s single issue against them and affirm the trial court's order insofar as it overrules their motion to dismiss. In all other respects, I concur with the majority's resolution of this cause.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE, ASSIGNED

151373DF.P05

–10–