

# IN THE
# TENTH COURT OF APPEALS

### No. 10-20-00081-CV

**CARLY CASSADY,**

                                                              **Appellant**

 **v.**

**KIMBERLY N. HAYNES, D.M.D.**
**AND HAYNES DENTAL, PLLC**
**D/B/A ASPEN DENTAL,**

                                                              **Appellees**

---

**From the 361st District Court**
**Brazos County, Texas**
**Trial Court No. 19-001407-CV-361**

---

## MEMORANDUM OPINION

---

This is a health care liability claim filed by Carly Cassady against Kimberly N. Haynes, D.M.D., and Haynes Dental, PLLC D/B/A Aspen Dental. At issue in this case is the sufficiency of two expert reports filed by Cassady, one by Dr. Mel Hawkins and the other by Dr. Chuck Majors. Dr. Haynes, Haynes Dental, and Aspen filed objections to the two reports and asked the trial court to dismiss Cassady's lawsuit because the reports

were not sufficient under the Texas Medical Liability Act. The trial court sustained the objections as to Dr. Hawkins's report, overruled the objections as to Dr. Majors's report, and it denied the motion to dismiss.

As a preliminary matter, we note that Dr. Haynes, Haynes Dental, PLLC D/B/A Aspen Dental filed a notice of appeal with the District Clerk of Brazos County on February 26, 2020. They appeal from that portion of the order of the trial court in which the trial court overruled their objections to Dr. Majors's report. They also appeal the trial court's denial of their motion to dismiss.

The next day, February 27, 2020, Cassady filed her notice of appeal with the District Clerk of Brazos County. In Cassady's notice of appeal, she challenges the trial court's order "only in so far as the Order sustains the Defendants' objections to Dr. Mel Hawkins' Chapter 74 Report."

This appeal has been docketed in this court to designate Cassady as the Appellant/Cross-Appellee and Dr. Haynes, Haynes Dental, PLLC D/B/A Aspen Dental are designated as Appellees/Cross-Appellants. We will refer to the parties either by name or as docketed in this court.

In her lawsuit, Cassady alleged that she went to Dr. Haynes for what was to be a routine filling procedure. The claim is that Dr. Haynes improperly administered a local anesthetic and caused the needle to penetrate an artery in her mouth. Cassady became

ill, her skin turned pale, and she passed out. She also began to experience a convulsive seizure and full body contractions. Further, she began to vomit violently.

Someone in Dr. Haynes's office called EMS, and she was taken to the hospital by ambulance where she was treated by hospital personnel. Cassady alleged that at some point she began to suffer from back pain, neck pain, shoulder pain, difficulty of speech, soreness, weakness, decreased flexibility, muscle spasms, fatigue, and nausea.

Cassady alleged some eight acts of negligence and pleaded that each constituted a breach of the standard of care and that each, alone or in concert with the others, was a proximate cause of the occurrence and her damages.

This lawsuit is subject to the Texas Medical Liability Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. ch. 74 (West). Under the provisions of Section 74.351(a) of the TMLA, a plaintiff who asserts a health care liability claim must submit an expert report, along with the expert's curriculum vitae, as to each physician or health care provider named as a defendant in the suit, no later than the 120th day after the date each defendant files its original answer. TEX. CIV. PRAC. & REM. CODE ANN. §74.351(a) (West).

Under Section 74.351(r)(6) of the TMLA, an expert report is a written report providing "a fair summary of the expert's opinions ... regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. §74.351(r) (West).

If a plaintiff timely files an expert report and the defendant moves to dismiss because the report is inadequate, the trial court must grant the motion "only if it appears to the court, after hearing, that the report does not represent an objective good-faith effort to comply with the definition of an expert report" in Section 74.351(r)(6). TEX. CIV. PRAC. & REM. CODE ANN. §74.351(l) (West).

To constitute a "good-faith effort," the report must contain enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). "A valid expert report has three elements: it must fairly summarize the applicable standard of care; it must explain how a physician or health care provider failed to meet that standard; and it must establish the causal relationship between the failure and the harm alleged." *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6)).

A report that merely reflects the expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements. *Wright*, 79 S.W.3d at 52. When a trial court determines whether the report represents a good-faith effort, its inquiry is limited to the four corners of the report. Section 74.351(r)(6); *Palacios*, 46 S.W.3d at 878.

We review a trial court's decision on the adequacy of an expert report under the TMLA for an abuse of discretion. *Miller v. JSC Lake Highlands Operations*, LP, 536 S.W.3d 510, 512 (Tex. 2017) (citing *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam)); *Palacios*, 46 S.W.3d at 877 (Tex. 2001). "A trial court abuses its discretion if it rules without reference to guiding rules or principles." *Miller*, 536 S.W.3d at 512-13 (quoting *Van Ness*, 461 S.W.3d at 142). "When reviewing matters committed to the trial court's discretion, 'the reviewing court may not substitute its judgment for that of the trial court.'" *Miller*, 536 S.W.3d at 513 (quoting *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992)).

A trial court does not abuse its discretion simply because it may decide a matter within its discretion differently than an appellate court would determine the issue. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). However, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker*, 827 S.W.2d at 840.

We will first examine the expert report authored by Dr. Hawkins.

A large portion of Dr. Hawkins's report consists of a verbatim recitation of the notes made by Dr. Haynes. Dr. Hawkins notes that there is an "absence of . . . information about the syringe and needle used." Later in his report, Dr. Hawkins again notes the lack of information about needle size and type of syringe used by Dr. Haynes. According to Dr. Hawkins, that information would not be recorded "even by most wise and prudent

dentists in practice and would require the dental assistant to testify that her dentist did in fact 'pull back' on the thumb ring to perform the aspiration, assuming the DA saw it and even understands what aspiration is. . .."

Dr. Hawkins opines that the "standard of the procedure(s) in this issue include the use of a 25 ga. needle to do an inferior alveolar block, lingual block as taught in the majority of Universities in the USA and Canada concurrent with a self aspirating syringe. . . . " Dr. Hawkins states, "I do not have enough information to comment further as stated elsewhere in this report."

In his opinion as to the breach of the "standard of the procedure," Dr. Hawkins's analysis assumes the use of a 30 ga. needle and manual syringe, the very information that Dr. Hawkins noted that he did not have available to him. He states, "breach could have been a factor in causing injury, assuming a 30 ga. needle was used, it is probable to say that aspiration could not be done. Using a barbed type manual syringe, it is anybody's guess. . . "

Through no fault of his own, Dr. Hawkins knew neither the size of the needle nor the type of syringe that Dr. Haynes used nor how she used it. Yet, Dr. Hawkins's opinions were based upon the assumption of the use of a specific needle size and a certain type syringe.

When Dr. Hawkins addressed the causal relationship between any failure to meet the standard of care and the injuries alleged by Cassady, he stated, "I was not there at the

time of the adverse event or at any other time to date to observe the injuries and can only rely on the chart notes and pt. descriptions." He continued, "Discovery conducted in the future may reveal more facts which would potentially offer more clarification re: breach and causation of injury."

A plaintiff is not required to marshal all its proof in an expert report. However, the expert "must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *American Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001).

Even if Dr. Hawkins has set forth the applicable standard of care, there is nothing in his report to show how Dr. Haynes failed to meet that standard. Dr. Hawkins's report was based upon the assumption that a certain size needle was used with a certain type syringe, but there is nothing in the report to indicate what size and type Dr. Haynes used.[1] Further, there is nothing in the report to connect any such failure to the "injury, harm, or damages claimed" by Cassady. The trial court did not abuse its discretion when it found Dr. Hawkins's report to be deficient. We overrule Cassady's issue on appeal in which she claims otherwise.

---

[1] Toward the end of the 120 day period in which Cassady had to file her expert report, her lawyer telephoned the lawyer for Cross-Appellants and asked him about the needle size and type of syringe; Cross-Appellant's lawyer declined to give him the information. No formal discovery was ever sought as provided for in section 74.351(s) of the Texas Civil Practice & Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. §74.351 (s) (West).

We next examine the report prepared by Dr. Chuck Majors.  The trial court ruled that Dr. Majors's report was sufficient under the TMLA.  Accordingly, the trial court overruled the objections leveled against the report by Dr. Haynes and her co-defendants; it also denied the motion to dismiss filed by them.

In their brief, Cross-Appellants do not set forth "issues on appeal."  Instead, they present their contentions under a section of their brief entitled "Arguments & Authorities."  In the heading of a section of their brief denominated as "II" Cross-Appellants state, "Cassady fails to resuscitate Dr. Majors' report."  In essence, in this section of Cross-Appellants' brief, they attack the trial court's ruling that Dr. Majors's report was an adequate expert report under the TMLA.

Dr. Majors states that when Dr. Haynes administered the numbing injection, Cassady experienced an instant burning sensation in her lip on the lower right side.  Dr. Majors opined that "[t]his was an indication that the needle had penetrated the neurovascular bundle where the artery is located."  Dr. Majors described the physical changes that occurred within a minute of the numbing injection administered by Dr. Haynes.  It was Dr. Majors's "professional opinion that the episode was likely caused by inadvertent intravascular injection of the local anesthetic used by the doctor to numb the patient."  He further stated that "the episode was caused by the injection into the blood stream."

In his report, Dr. Majors refers to a statement in the "Handbook of Local Anesthesia" in which the author takes the position that with a proper injection technique and with the use of an aspirating syringe, an injection into the inferior alveolar artery should not occur. However, nowhere in the report does Dr. Majors set forth what that proper injection technique is. Nor does Dr. Majors state how Dr. Haynes failed to follow the proper injection technique, whatever that might be. We conclude that Dr. Majors did not set forth the applicable standard of care and how Dr. Haynes breached that standard of care.

Further, as to the causal relationship between any breach and injury, Dr. Majors stated that "As [Cassady's] body was in a tonicclonic seizure resulting in full body contractions, *somehow*, she injured her neck and back." (emphasis added). The use of the word "*somehow*" is telling as to the lack of the adequacy of the report as to causation. Further, the stated qualifications of Dr. Majors do not speak to his ability to opine as to Cassady's non-dental injuries such as back pain, neck pain, shoulder pain, difficulty of speech, soreness, weakness, decreased flexibility, muscle spasms, fatigue, and nausea.

We hold that the trial court abused its discretion when it ruled that Dr. Majors's report was sufficient under the TMLA. We sustain Cross-Appellants' argument that Dr. Majors's report was an inadequate expert report under the TMLA.

Cassady correctly states that Dr. Hawkins's report and Dr. Majors's reports can be considered together on the issue of the adequacy of expert opinion. "Expert reports can

be considered together in determining whether the plaintiff in a health–care liability action has provided adequate expert opinion regarding the standard of care, breach, and causation." *Salais v. Texas Dep't of Aging & Disability Servs.*, 323 S.W.3d 527, 534 (Tex. App.—Waco 2010, pet. denied). In this case, however, neither expert report supplies information sufficient to overcome deficiencies in the other.

Our holdings as above set forth obviate the necessity to discuss any other issues raised in this appeal.

Section 74.351(c) of the TMLA provides that if a report is found deficient, the court may grant one 30-day extension to the plaintiff in order to cure the deficiency. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (West).

We affirm the judgment of the trial court insofar as it held that the report of Dr. Hawkins was insufficient as an expert report under the TMLA. We reverse that part of the judgment of the trial court wherein it found that Dr. Majors's report was sufficient as an expert report under the TMLA. We remand that issue to the trial court for it to determine whether to grant Cassady a 30-day extension in order to cure the deficiencies in the report.

JIM R. WRIGHT
Senior Chief Justice

Before Chief Justice Gray,
      Justice Johnson,
      and Justice Wright[2]
Affirmed
Opinion delivered and filed June 1, 2022
[CV06]



---

[2] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. See TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.